UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT R.,

                              Plaintiff,

v.                                                       5:19-CV-680
                                                                   (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Attorney for Plaintiff<br>126 N. Salina Street, Suite 3B<br>Syracuse, New York 13202 | STEVEN R. DOLSON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br> *Counsel for Defendant*<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203 | HUGH DUN RAPPAPORT, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Robert R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for Social Security Disability Insurance ("SSDI"). (Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 7, 10.) Oral argument was not heard. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate Judge.

(Dkt. Nos. 3, 5.)  For the reasons discussed below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on June 24, 1956.  (Administrative Transcript at 163.[1])  He was a high school graduate, and served as a community service officer for thirty-six years, assisting local police with duties such as airport security, traffic control, and front desk duty.  (T. 33-38, 423.)  In his last five years at this position, his duties were essentially equivalent to a booking officer for the police department. (T. 54-55.)  He retired from this position due to his physical and mental impairments. (T. 48-50, 72, 179, 423.)

On December 3, 2015, Plaintiff filed an application for SSDI, alleging an onset date of July 7, 2015.  (T. 79, 163-164.)  Plaintiff's application was initially denied on April 5, 2016.  (T. 91-96.)  Thereafter, Plaintiff filed a written request for a hearing, which was held on February 21, 2018, before Administrative Law Judge ("ALJ") Paul Barker.  (T. 26-64.)  On July 18, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 8-25.)  On April 23, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-5.)  Plaintiff commenced this action on June 6, 2019.  (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.  Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

## II.     RELEVANT LEGAL STANDARD

### A.     Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

### C. Standards for ALJ Evaluation of Opinion Evidence

In making a disability determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include

5

whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's Residual Functional Capacity ("RFC"); how the vocational factors apply; and whether the plaintiff is "disabled" under the Act.  *Id.*

In evaluating medical opinions on issues reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules being applied and the weight being accorded to the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

### D.     Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term. SSR 16-3p, 81 FR at

14167. Instead, symptom evaluation tracks the language of the regulations.[3] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[4]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6)

---

[3] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167. The Court will remain consistent with the terms as used by the Commissioner.

[4] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

**III.   THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. (T. 13-25.) In his May 18, 2018, decision, the ALJ found Plaintiff's last date insured was December 31, 2017, and Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 7, 2015. (T. 13.) The ALJ determined Plaintiff has the following severe impairments: coronary artery disease; status post myocardial infarction; hypertension; degenerative disc disease of the cervical and lumbar spine; diabetes; peripheral neuropathy; obesity; and glaucoma. (T. 13-16.) The ALJ also determined that Plaintiff's diagnosed depression and anxiety do not rise to the level of severe impairments. (T. 14-16.) The ALJ next determined Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (T. 16-17.) He found Plaintiff has the RFC to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b). Specifically, Plaintiff "is able to lift up

to 20 pounds at a time, frequently lift or carry objects weighing up to 10 pounds, and stand, walk and sit for approximately six hours each in an eight-hour workday.  He can frequently stoop, climb ramps and stairs, balance, kneel, and crouch, and he can occasionally crawl and climb ladders, ropes, and scaffolds." (T. 17-20.)   Relying on the vocational expert ("VE") hearing testimony, the ALJ determined Plaintiff is able to perform his past relevant work as a front desk community service officer, as performed for the last five years of his employment.  (T. 21, 54-61.)  Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from the alleged onset date of July 7, 2015 through the decision date of May 18, 2018.  (T. 21.)

## IV. THE PARTIES' CONTENTIONS

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ failed to include visual limitations associated with Plaintiff's glaucoma.  (Dkt. No. 7 at 5-9.)  In response, the Commissioner contends the ALJ's decision applies the correct legal standards and is supported by substantial evidence.  (Dkt. No. 10 at 4-10.)

## V. THE COURT'S ANALYSIS

### A. Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

### 1. Plaintiff's Glaucoma

Plaintiff contends the ALJ erred by ignoring the visual limitations imposed by Plaintiff's glaucoma and compounded this error by failing to further develop the record on this issue. (Dkt. No. 7, at 5-9.) The ALJ relied on the available record evidence to determine Plaintiff's glaucoma was a severe impairment but found it did not impact his ability to perform light work. (T. 19.) This Court concludes the ALJ had substantial evidence to support this determination, and further development of the record related to Plaintiff's vision was not required.

As described in Plaintiff's medical records, Plaintiff has a history of open-angle glaucoma[5] in both eyes dating back to the 1980s. (T. 353.) He first had surgery to address the problem in 2011. (*Id*.) On March 31, 2016, Dr. Elke Lorensen performed a consultative examination of Plaintiff. Although Dr. Lorensen is not an ophthalmologist, she performed a

---

[5] Open-angle glaucoma is the most common form of glaucoma, and results from a build-up of fluid in the eye, increasing pressure on the eye and potentially damaging the optic nerve. https://www.webmd.com/eye-health/eye-open-angle-glaucoma#1

standard vision test on Plaintiff as part of her examination. (T. 418.) Plaintiff had 20/100 vision in his right eye, and 20/30 vision in his left eye.[6] (*Id*.) Using both eyes, Plaintiff's vision was 20/30, without glasses. (*Id*.) Dr. Lorensen observed Plaintiff's eyes were clear, with normal pupils and healthy eye movement. (T. 418.)

The ALJ also summarized Plaintiff's most recent ophthalmologic records as part of his RFC determination. (T. 19.) In January and February 2017, Plaintiff underwent right eye surgery to address cataracts in his right eye, and to replace previously implanted valves to relieve his glaucoma.[7] (T. 431, 433.) Post-surgery ophthalmology records show similar vision issues as those observed at Plaintiff's consultative examination. At a post-operative evaluation on February 22, 2017, Plaintiff complained his vision was fuzzy but generally cleared up during the day. (T. 494.) His vision tested at 20/30. (*Id*.) At a March 1, 2017, appointment, Plaintiff described his visual acuity as "pretty good." (T. 492.) Following an examination, his vision was 20/30. (T. 492.) On June 16, 2017, Plaintiff reported he didn't see any difference in his vision and complained of double vision occurring once or twice per day. (T. 484, 486.) His vision again tested at 20/30. (T. 486.)

At the February 21, 2018, administrative hearing, the ALJ questioned Plaintiff regarding his vision:

Q:    Tell me about your eyes?

---

[6] A visual acuity test measures the clarity or sharpness of vision. The first number measures the distance in feet from an eye chart, and the second number is the distance at which a person with normal eyesight (20/20) can read the same line. For example, an individual with 20/30 vision can read letters on an eye chart from twenty feet away that most people can read from thirty feet, so his or her vision is worse than average. https://www.aao.org/eye-health/tips-prevention/what-does-20-20-vision-mean.

[7] This surgery requires implanting a small tube or filament in front of the iris, allowing excess fluid to drain out of the eye. https://www.glaucoma.org/treatment/glaucoma-implants.

>       A:      Okay.
>       Q:      Because you have glaucoma? Right?
>       A:      Yes, I do.
>       Q:      And you had two surgeries on your right eye in early 2017? Right?
>       A:      Yes.
>       Q:      Tell me how is your eyesight?
>       A:      Well right now I got double vision in it and he's still working in it. I still have stitches in it and I've got double vision and they're trying to correct that.
>       Q:      That's in the right eye?
>       A:      That's in the right eye. Yes.
>       Q:      How's the left eye?
>       A:      Well, the left eye I have to have surgery on that once this one clears up.
>       Q:      How can you see in it now?
>       A:      Well, it's pumps in each eye.
>       Q:      It's what?
>       A:      I have pumps in each eye. I have to [INAUDIBLE] to keep the pressure down. It's not really clear vision but it's good enough.
>       Q:      Okay. Do you drive?
>       A:      A little. If I wear glasses. He gives me the glasses to offset the double vision.
>       Q:      Do the glasses allow you to see without the double vision?
>       A:      Yes, I can see.

(T. 42-43.)

Plaintiff contends the ALJ erred by (1) failing to incorporate visual limitations into his RFC, and (2) failing to further develop the record regarding Plaintiff's visual impairments. (Dkt. No. 7 at 8-9.) However, Plaintiff has not identified any deterioration in Plaintiff's vision requiring either alteration of the RFC or further development of the record. *See Rutledge v. Saul*, No. 18-CV-1120F, 2020 WL 1526921, at *5 (W.D.N.Y. March 31, 2020) (ALJ did not err in finding Plaintiff's ability to perform prior work was unaffected by vision impairment where medical record did not suggest any significant deterioration or new diagnosis impacting basic work activities). Plaintiff had 20/30 vision during his 2016 consultative examination and had 20/30 vision following his recovery from January 2017 glaucoma surgery. (T. 418, 486.) Plaintiff himself described this vision as "pretty good" and "good enough" on separate occasions.

(T. 42-43, 492.)  He reported prescribed eyeglasses helped correct or offset his double vision, and allowed him to drive a car on a regular basis.  (T. 42-43.)  These statements are consistent with Plaintiff's function reported submitted in January 2016, when the only identified visual limitation was a more frequent need to wear his glasses.  (T. 230.)

Remand is not necessary where Plaintiff's testimony provides an ALJ sufficient evidence to conclude Plaintiff has the vision to perform most work tasks.  *See Johnston v. Astrue*, No. CV-07-5089 (SJF), 2008 WL 4224059, at *6, 11 (E.D.N.Y. Sept. 8, 2008) (substantial evidence supported RFC determination Plaintiff could still perform light work where Plaintiff testified he still drove a car during daylight hours and did not wear any corrective lenses despite "very limited vision" in his left eye.); *c.f. Eltareb v. Berryhill,* No. 17-CV-9409 (LGS) (BCM), 2019 WL 6376705, at *10 (S.D.N.Y. January 28, 2019) (remanding where Plaintiff testified her partial blindness impacted her academic performance.)  In light of the ALJ's consideration of Plaintiff's consistent 20/30 vision, and Plaintiff's testimony describing no major functional impacts stemming from his glaucoma, the ALJ's decision to exclude any vision restrictions from the RFC determination was supported by substantial evidence.

Plaintiff's argument that the ALJ ignored or did not adequately develop the record evidence related to his vision is premised upon a disagreement over how the ALJ resolved arguably conflicting evidence, and this Court will not reweigh the evidence presented to the ALJ. *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is

substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation* adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). Accordingly, the Court finds the ALJ's evaluation of Plaintiff's glaucoma to be supported by substantial evidence.

Moreover, even if the ALJ had erred with regard to his evaluation of Plaintiff's glaucoma, such error would be harmless. Plaintiff contends his difficulties with near visual acuity (defined as vision within twenty inches or less) prevent him from performing his prior work as a front desk or booking community service officer, in light of the VE testimony that such work would require near visual acuity "at the frequent level." (T. 61.) However, the VE also identified at least one job existing in significant numbers in the national economy Plaintiff was capable of performing, even with problems with near acuity. (T. 59.) In response to the ALJ's hypothetical, the VE opined an individual with Plaintiff's RFC could perform the representative job of storage facility rental clerk. (T. 59.) As the Commissioner points out, the Dictionary of Occupational Titles does not identify any visual demands for this position.[8] *See* DOT §295.367-026, 1991 WL 672594 (January 1, 2016). Accordingly, there was still at least one job existing in significant numbers in the national economy Plaintiff could perform, and the alleged visual limitation would not alter the ultimate disability determination. *See Bull v. Commissioner of Soc. Sec.*, No. 1:05–CV–1232 (LEK/RFT), 2009 WL 799966 (N.D.N.Y. Mar.

---

[8] The VE identified two other representative positions, furniture rental consultant and routing clerk. (T. 58-59.) Both these positions required near visual acuity on a frequent basis. *See* DOT § 295.357-018, 1991 WL 672589 (January 1, 2016); DOT § 222.687-022, 1991 WL 672133 (January 1, 2016).

25, 2009) ("Although [VE] identified only 'a single job, the Social Security Act affords benefits only to those who cannot 'engage in any other kind of substantial gainful work which exists in the national economy [.]'"); *Sullivan v. Astrue*, No. 08–CV–6355 (CJS), 2009 WL 1347035, at *15 n. 15 ("Even if the VE had identified only one job that existed in sufficient numbers, the Commissioner would have met his burden at the fifth step.").

### 2.     Remainder of RFC and Disability Determination

Plaintiff focused his arguments in this proceeding on the ALJ's consideration of his glaucoma, but this Court will review the rest of the ALJ's analysis at Steps 4 and 5 to confirm the ALJ's disability determination was supported by substantial evidence.

The record did not include any formal treating physician statements, such as a Medical Source Statement. However, the ALJ considered treatment notes of Dr. Barbara Krenzer, Plaintiff's primary care physician, containing her opinion Plaintiff is "100% disabled." (T. 20, 438.) He assigned this opinion little weight because it reached a conclusion reserved for the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'")

As previously discussed, the ALJ also considered the March 31, 2016, opinion of consultative examiner Dr. Lorensen. In Dr. Lorensen's opinion, Plaintiff has "no gross limitations sitting, standing, walking, and handling small objects with the hands." (T. 420.) She further opined Plaintiff has "[m]oderate limitations bending, lifting, reaching, and turning the head." (*Id.*) The ALJ assigned "limited weight" to this opinion, because it failed to provide a function-by-function assessment and was based on a single examination. (T. 19.) He found record evidence to support her opinion that Plaintiff had some limitations with regard to lifting, but none to support the described limitations with bending, reaching, and turning his head. (*Id.*)

15

Given the extensive medical record and other evidence in this case, the ALJ still had substantial evidence on which to base his RFC determination, despite the lack of a medical opinion deemed reliable by the ALJ.  *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (affirming ALJ's RFC determination based on extensive medical record despite the absence of formal opinions as to claimant's RFC).  Where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," a medical source statement or formal medical opinion is not necessarily required.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (quoting *Tankisi*., 521 F. App'x at 34.  Here, the ALJ had sufficient evidence from Plaintiff's treatment record, the objective findings of the consultative examination, and Plaintiff's own testimony to support his determination Plaintiff could perform less than the full range of light work.

The ALJ's decision summarizes Plaintiff's medical history, beginning with his July 2015 heart attack, followed by extensive recovery and rehabilitation.  (T. 18, 20, 316, 319.)  Plaintiff was ultimately diagnosed with coronary artery disease, but the ALJ cited numerous follow-up treatment notes from Dr. Krenezer and others dated between July 2015 and August 2017 depicting an absence of typical cardiac symptoms such as chest pain or shortness of breath, along with normal cardiovascular examination results.  (T. 18, 314-315, 471-472, 561-562, 589-590, 603, 616-619, 631, 647.)  In general, Plaintiff reported no limitations in his daily activities caused by cardiovascular issues, and described an increased activity level as his recovery progressed.  (T. 576, 589, 683-684.)  The only exception was a brief January 2018 hospital visit due to chest pain, but Plaintiff exhibited no symptoms at his follow-up appointment in February 2018.  (T. 654, 677, 683, 694.) Ultimately, the ALJ found "[t]he overall record documents that [Plaintiff] recovered well from his heart attack and that within several months after the

occurrence, he did not have any further cardiac complaints and the overall ensuing records document that he was well-functioning." (T. 20.)

The ALJ also reviewed medical records related to Plaintiff's diagnosed chronic conditions predating the alleged onset date, including hyperlipidemia, hypertension, degenerative disc disease, neck pain, obesity, diabetes, and peripheral neuropathy. (T. 18-19, 320-321, 443.) Citing those records, the ALJ concluded the symptoms associated with these impairments were all reasonably well-controlled with medication. (T. 19, 447-448.) In particular, the ALJ noted successful control of Plaintiff's back pain with medication, as well as the lack of any significant imaging reports depicting any spinal deterioration. (T. 18, 20, 364, 421).

These medical records were consistent with the objective results of Dr. Lorensen's consultative examination in March 2016. (T. 19, 417-420.) During the examination, Plaintiff exhibited a normal gait, required no assistive devices, and had no difficulty changing for the examination, getting on and off the examination table, and rising from a chair. (T. 418.) Plaintiff showed some reduced flexion, extension, and rotation in the cervical and lumbar spine, but full range of motion in the elbows, forearms, and wrists bilaterally. (T. 419.) He showed full strength in the upper and lower extremities, with intact hand and finger dexterity and full grip strength in both hands. (*Id*.)

At his February 21, 2018, administrative hearing, Plaintiff testified he was able to sit for twenty to thirty minutes at a time before needing a break to stretch or lie down, and he could walk for fifteen to twenty minutes at a time. (T. 37, 44.) He also testified he went to the gym three times per week to do about thirty minutes of exercises in the pool. (T. 44-45.) As set out in the record, Plaintiff has followed this exercise regimen since at least January 2016. (T. 228.) When home, Plaintiff's daily activities included watching television, browsing the internet, and

light chores such as sweeping.  (T. 46-47.)

Plaintiff's treatment records show diagnoses of reactive depression, sleep disturbance and fatigue following his heart attack.  (T. 323.)  Although the ALJ ultimately concluded Plaintiff did not have any severe mental impairments, he reviewed Plaintiff's mental health records in detail. (T. 14-16.)   Key to the ALJ's severity determination were the treatment records showing improved mood and outlook over time, after Plaintiff was prescribed psychiatric medication.  (T. 445-446, 448.)

The ALJ also considered the opinion of Dr. Dennis Noia, who conducted a psychiatric consultative examination of Plaintiff in March 2016.  (T. 423-426.)  In Dr. Noia's opinion, Plaintiff had mild limitations with regard to maintaining attention and concentration for tasks and dealing with stress, but appeared able to relate and interact moderately well with others.  (T. 14-15, 423-426.)  The ALJ assigned this opinion great weight because it was consistent with Plaintiff's treatment history. (T. 15.)  The ALJ also assigned great weight to the opinion of state consultant Dr. K. Leiber-Diaz, who opined Plaintiff's psychiatric impairments did not limit his adaptive functioning.  (T. 15, 83-84.)  Relying on these opinions, the ALJ concluded Plaintiff had no mental functional limitations impacting his ability to perform light work.  (T. 20.) "[S]tate agency physicians are qualified as experts in the evaluation of medical issues in disability claims," and as such, "their opinions may constitute substantial evidence if they are consistent with the record as a whole." *Leach ex rel. Murray v. Barnhart*, No. 02-CIV-3561 (RWS); 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (citing *Mongeur*, 722 F.2d at 1039); *see also Lewis v. Commissioner,* No. 00–CV–1225, 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005)*; Blanchard v. Berryhill*, No.. 3:17-CV-01534 (KAD); 2019 WL 859266, at *5 (D. Conn. Feb. 22, 2019).  Accordingly, the ALJ's analysis of Plaintiff's mental impairments was

supported by substantial evidence.

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole).

Because the ALJ relied on Plaintiff's extensive medical records, it was not necessary for the ALJ to seek additional medical information regarding Plaintiff's RFC. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information." (internal quotation marks omitted)). In this case, the ALJ had extensive evidence depicting an improvement in Plaintiff's physical and mental functioning as he recovered from his July 2015 heart attack. The ALJ relied on this evidence in determining Plaintiff was capable of performing less than the full range of light work.

In light of the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and his activities of daily living, this Court concludes the RFC determination was supported by substantial evidence. The ALJ then relied upon this RFC determination in his questioning of the VE, and his ultimate determination that Plaintiff was capable of performing his prior employment. Therefore, these findings are also supported by

substantial evidence. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009) (holding ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 15, 2020
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge